IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

COLMAN McNEELY                                                                                    PLAINTIFF

v.                                    CASE NO.         11-3134

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

The plaintiff filed her applications for DIB and SSI on March 16, 2010, alleging an onset date of October 5, 2009, due to plaintiff's Seizures, Hypertension, and Difficulty Reading (T. 186). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on May 23, 2011. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 52 years of age and possessed a 3rd Grade Education. The Plaintiff had past relevant work ("PRW") experience as a Dishwasher

(T. 188).

On October 5, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's seizure disorder, hypertension. low average IQ, and alcohol abuse did not meet or equal any Appendix 1 listing.  T. 13-14.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with some non-exertional limitations.  T. 15.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform his past relevant work as a Dishwasher.  T. 20.

## II.  Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion

The Plaintiff contends the ALJ committed error by (A) failing to find that the Plaintiff met the requirements of a listed impairment, and (B) by improperly discounting the credibility of the Plaintiff.

**A. Step Three**

The Plaintiff first contends that ALJ committed error by failing to find that his seizure disorder met a listed impairment. (ECF No. 10, p. 9). The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is made at step three of the disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical

equivalence" has been established. Id. § 416.926(e). An impairment is medically equivalent under the regulations if it is "at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a). If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled. Id. § 416.920(a)(4)(iii). *Carlson v. Astrue* 604 F.3d 589, 592 (C.A.8 (Iowa),2010)

>Listing 11.02 directs a finding of disabled when the claimant shows:
>
>11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
>    A. Daytime episodes (loss of consciousness and convulsive seizures) or
>    B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
>Listing 11.03 describes the criteria for disability due to seizures that do not involve the

loss of consciousness or convulsions:

>11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

The ALJ stated that there "is no credible evidence in the medical record showing that the claimant experiences seizures despite 3 months of prescribed treatment." (T. 14). This seems to be the total of the ALJ discussion at step two regarding the Plaintiff's seizures, however, subsequently in the ALJ's decision he noted that the Plaintiff admitted in his Disability Report dated October 2009 that he had last taken medication in July 2009. (T. 195). The court notes that this is not a form that the Plaintiff is completing but a form that a government worker is

completing based upon information supplied by the Plaintiff. Regardless, that information does not appear to be correct.

The pharmacy records from Fred's Pharmacy shows the last prescription the Plaintiff obtained for Divalproex was filled there in June 2009 and not refilled again until February 15, 2011. (T. 213). It appears, however, from the prescription record from Walmart that a prescription for a quantity of 60 Divalproex EC500MG was filled on September 11, 2009. (T. 184). The Plaintiff's prescription at that time was for 500mg b.i.d. (two times per day) which would have that prescription run through October 2009. The Plaintiff still appears to have been without his medication for around 14-16 months.

It is further verified by the medical records that reflect in February 2011 the Plaintiff reported to his treating physician that he had "not been taking his meds as he should" because he ran out "last week". (T. 427). There does not appear to be a prescription that was filled between September 2009 and February 2011. It is clear that the Plaintiff began to have his seizure medication filled again beginning in February 2011 but his doctor reports for February 2011 (T. 427) and March 2011 (T. 426) do not reflect any complaints of seizures.

The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); *Johnson v. Barnhart* 390 F.3d 1067, 1070 (C.A.8 (Ark.),2004).

The Plaintiff has failed to prove that he continued to have seizures "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment". Thus, I find

the ALJ's decision that the Plaintiff did not meet the listed impairment under 11.02 or 11.03 supported by the record.

**B. Step Four**

The Plaintiff next complains that the ALJ's decision that the Plaintiff can perform his past relevant work as a dishwasher is not supported by substantial evidence. (ECF No. 10, p. 13).

Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to past relevant work. *Pate-Fires v. Astrue* 564 F.3d 935, 942 (C.A.8 (Ark.),2009) *citing Steed v. Astrue,* 524 F.3d 872, 875 n. 3 (8th Cir.2008). The ALJ will find that a claimant is not disabled if he retains the RFC to perform: (1). The actual functional demands and job duties of a particular past relevant job; or (2) The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002))

    **1. Credibility**

The Plaintiff contends that the ALJ improperly discredited the Plaintiff's subjective complaints. The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at

695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

The ALJ found that the "claimant alleges that he is unable to work due to seizure disorder, hypertension, and a past right ankle fracture (Testimony; Exhibits 2E, 3E, and 4E). Furthermore, while the claimant did not allege these impairments, the medical evidence of record reveals a low average IQ and alcohol abuse (Exhibits IF, 2F, 5F, 11F, and 12F). The claimant alleges that his impairments cause seizures on average of every other day, dizziness, feelings of being hot and sweaty, leg swelling, and disturbed sleep due to seizures (Testimony; exhibits 2E and 3E). The claimant further alleges that he cannot read or write well (Testimony; exhibits 2E and 4E). The claimant also alleges that his seizure medication causes dizziness (Testimony). Moreover, the claimant alleges that his symptoms affect his ability to lift, squat, bend, stand, talk, remember, concentrate, follow written instructions, and handle stress (Testimony and exhibit 4E).

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." T. 16-17.

The ALJ listed, among other findings, that the Plaintiffs failure to comply with his medication, that the record showed that his seizures were in fact well controlled with medication

, and his continued abuse of tobacco and alcohol reduced his credibility.

### a. Failure to Comply

The ALJ first determined that the Plaintiff was non-compliant with treatment. As previously discussed the Plaintiff failed to take any seizure medication between October 2009 and February 2011. In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).  As pointed out above the Plaintiff was off of any seizure medication from September 11, 2009 (T. 184) until February 15, 2011 (T. 213).

The Plaintiff attempted to argue that he was off of his medication because he could not afford it however he admitted at the hearing that he was still smoking about a pack to a pack and a half per day.  (T. 48-49)*.  See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, the fact that he chose to smoke rather than pay for medications was inconsistent with disabling pain). His medical records from 2002 reflected that he smoked "about a pack a day " (T. 259).  What is clear is that the Plaintiff is a heavy smoker, has been for years, and persisted at the time of hearing.  (T. 261, 262, 269, 291, 305, 392, 399).  His claim that he could not afford medication is without merit.

### b. Seizures Effectively controlled with medication

The ALJ noted that the Plaintiff's seizure disorder appeared to be effectively controlled

with proper medication. (T. 17). The first medical record of a seizure was in December 2004. (T.338). The next reference to any seizure problem was self reported by the Plaintiff when he was hospitalized for detoxification from alcohol in 2006 (T. 386). The next medical report that reflects the Plaintiff's report of a seizure was December 4, 2009. (T. 428). At this time the Plaintiff had been out of medication since October 2009. (T. 184). The Plaintiff began to re-fill his seizure medication in February 2011. After being back on his seizure medication the Plaintiff's visits to his treating physician in February 2011 (T. 427) and March 2011 (T. 426) both reflect that he had suffered no seizure activity.

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

### c. Alcohol Use

The Plaintiff stated on his application in March 2010 that he did not use alcohol. (T. 182) The Plaintiff was cautioned about the use of alcohol and seizure medication in his prescription medication information. (T. 183). The Plaintiff was noted to have Tobacco and Alcohol Abuse by his treating physician in 2002 and cautioned against abuse of these. (T. 257). He was cautioned again to decrease his alcohol intake in 2003 (T. 266) and 2006 (273). In October 2006 the Plaintiff was assessed with Hypertension, GERD, Tobacco abuse and alcohol abuse (T. 277) and diagnosed with "multiple ulcers consistent with gastritis most likely secondary to alcoholism

Case 3:11-cv-03134-JRM   Document 12   Filed 12/20/12   Page 10 of 11 PageID #: 50

or alcohol intake" (T. 275). In November 2006 he represented that he was "down from a gallon whisky/vodka to about a pint over the last several weeks" but he was not willing to do inpatient treatment. (T. 274). During the Plaintiff's Mental Diagnostic Evaluation and Intellectual Assessment in December 2009 he admitted that he "drinks about two 6-packs per week (over two nights)" and on some weeks, admitted "drinking as much as four 6-packs of beer in one week" (T. 304) and he admitted that history of excessive alcohol use and tobacco use continued through the present (December 2009).

The Plaintiff was diagnosed with Alcohol Abuse by Dr. W. Charles Nichols (T. 307). The ALJ properly noted periods of noncompliance with Plaintiff's medication and treatment plan. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may properly consider noncompliance with medical treatment in weighing a claimant's credibility).

While the ALJ determined that the Plaintiff's alcohol consumption detracted from his credibility he did not find that his alcohol intake precluded him from benefits. The ALJ stated that while "I find the claimant's alcohol abuse to be severe, the fact that he was able to work while apparently drinking more than he currently does leads me to conclude that this condition imposes no disabling limitation on the claimant's ability to work." T. 19.

 "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The court finds that the ALJ has stated good reasons to discount the credibility of the Plaintiff.

   **2.  RFC**

The ALJ found that the Plaintiff had the RFC "to perform a full range of work at all

exertional levels, but with the following non exertional limitations: the claimant cannot climb ladders, ropes, or scaffolds, must avoid all exposure to hazards such as unprotected heights, large bodies of water, driving as a part of work activities, hazardous machinery, or moving parts. Further, the claimant can understand, remember, and carry out simple, but not detailed, instructions, can have no more than casual contact with the general public, and can attend to simple tasks for 2 hours at a time over an 8-hour workday, and he can perform work which requires no more than gradual and infrequent changes in the workplace setting." (T. 16). This RFC determination led the ALJ to conclude that the Plaintiff could return to his past relevant work as a dishwasher.

The only dispute that the Plaintiff claims to the ALJ's RFC assessment is concerning the ALJ's discounting of the Plaintiff's credibility.  That issue has been addressed above and the court has reviewed the ALJ's RFC assessment and finds that it is supported by the record.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this 20th day of December  2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE